**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| VB ASSETS, LLC, d/b/a Voicebox Tech<br><br>Plaintiff,<br><br>v.<br><br>SUCCESS FOODS MANAGEMENT GROUP, LLC D/B/A TORCHY'S TACOS,<br><br>Defendant. | Civil Action No. 2:25-cv-621<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff VB Assets, LLC d/b/a Voicebox Tech ("Plaintiff" or "VoiceBox") brings this Complaint against Defendant Success Foods Management Group, LLC d/b/a Torchy's Tacos ("Defendant" or "Torchy's Tacos" or "Torchy's") and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This is a civil action under 35 U.S.C. § 271 for Torchy's infringement of VoiceBox's U.S. Patent Nos. 10,510,341 ("the '341 patent"); 8,527,274 ("the '274 patent"); 8,145,489 ("the '489 patent"); and 12,236,456 ("the '456 patent") (collectively, "the VoiceBox Patents").

2.      VoiceBox, through its predecessor companies VoiceBox Technologies Corporation and VoiceBox Technologies, Inc. (collectively, "VoiceBox Technologies"), pioneered voice-based natural language understanding and artificial intelligence technology.

3.      In recognition of their many innovations, the U.S. Patent & Trademark Office awarded and issued the VoiceBox Patents.

4.      The innovations claimed in the VoiceBox Patents are fundamental to the development of voice assistants.

## PARTIES

5.      VoiceBox is a limited liability company organized under the laws of Delaware and has its principal place of business at 1229A 120th Avenue NE, Bellevue, WA 98005.

6.      VoiceBox is the owner of the entire right, title, and interest in each VoiceBox Patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

7.      On information and belief, Torchy's Tacos is a Delaware corporation with its principal place of business (headquarters) at 4501 Springdale Road, Austin, TX 78723 and with a registered agent at Corporation Service Company D/B/A CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

8.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.      Torchy's Tacos is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.  Personal jurisdiction exists generally over Torchy's Tacos because Torchy's Tacos has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business activities conducted within Texas, including in this District.  For example, on information and belief, Torchy's Tacos has its principal place of business (headquarters) in Texas at 4501 Springdale Road, Austin, TX 78723.  Further, on information and belief, Torchy's Tacos has committed, and continues to

commit the acts of patent infringement in the State of Texas and this District; Torchy's Tacos purposefully availed itself of the privileges of conducting business in the State of Texas and this District; and Torchy's Tacos regularly conducts and solicits business – including substantial marketing and sales of products – within the State of Texas and this District.

11.     Personal jurisdiction also exists over Torchy's Tacos because Torchy's Tacos, directly or through subsidiaries, agents, representatives, or intermediaries makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within the State of Texas, including in this District, that infringe one or more claims of the VoiceBox Patents. Further, on information and belief, Torchy's Tacos has placed or contributed to placing infringing products and/or services into the stream of commerce knowing or understanding that such products and/or services and used in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Torchy's Tacos has committed – and continues to commit – acts of infringement within this District giving rise to this action and, upon information and belief, maintains a regular and established place of business in this District including, but not limited to, for example, the restaurant located at 426 E. Southeast Loop 323, Tyler, TX 75701.

## BACKGROUND

13.     In 2001, three brothers—Mike, Rich, and Bob Kennewick—founded VoiceBox Technologies in Seattle, WA to bring voice-based natural language understanding ("NLU") to a wide array of computer applications.  They recognized that the typical computer speech-recognition systems forced human operators to adhere to a limited number of rigid speech prompts. These rigid prompts limited how systems were used and inhibited the widespread adoption of

speech-recognition systems.  The brothers believed that VoiceBox Technologies could become the first company to enable people to naturally and effectively interact with computer speech systems.

14.    From its inception, VoiceBox Technologies engaged in intense research efforts to develop its NLU technology.

15.    VoiceBox Technologies' development efforts were successful.  The company achieved a significant milestone when it developed a pioneering voice recognition prototype called "Cybermind."  As demonstrated on a local Seattle news segment, Cybermind was a voice-controlled speaker that could provide weather, recipes, sports scores, calendar updates, or play a song.[1]

 

*Cybermind Prototype featured on King5 News*

16.    VoiceBox Technologies' groundbreaking work caught the attention of the industry. Toyota hired VoiceBox Technologies to build a sophisticated NLU speech interface for its Lexus line of vehicles.  VoiceBox Technologies built the voice and NLU capability for Toyota's award-winning Entune multimedia system.[2]

---

[1] https://www.youtube.com/watch?v=DDcRyPnvWhw
[2] *See, e.g.*, *Toyota Announces Strategic Partnerships*, Jan. 30, 2009, *available at* https://www.gpsdaily.com/reports/Toyota_Announces_Strategic_Partnerships_999.html.

17.    As part of the development effort for the Lexus NLU interface, VoiceBox Technologies demonstrated a personal assistant called "Alexus" that showcased the power of its conversational voice technology.

18.    VoiceBox Technologies further developed applications of its technology for use in smart speakers, smartphones, smart TVs, computers, tablets, e-readers, and personal navigation devices.

19.    By January 2012, VoiceBox Technologies was a leader in NLU and conversational voice technology.  VoiceBox Technologies' clients included TomTom, Pioneer, Chrysler, Dodge, and Magellan.

20.    In 2013, the Institute of Electrical and Electronics Engineers (IEEE) ranked VoiceBox Technologies in the Top 15 for patent power in the computer software industry.

21.    As illustrated in the following company photograph, VoiceBox Technologies built a large team of engineers, scientists, linguists, and other personnel to develop its technology.



*VoiceBox Technologies Company Photograph*

22.    Over time, however, VoiceBox's patented technology was misappropriated by several companies.

23.    In 2018, Mike Kennewick sold VoiceBox Technologies to Nuance Communications, Inc., but maintained ownership of the VoiceBox Patents.

## THE VOICEBOX PATENTS

24.     The inventions claimed in the VoiceBox Patents are groundbreaking improvements in voice recognition and NLU technology.

### The '341 patent

25.     The '341 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued by the United States Patent & Trademark Office on December 17, 2019, and named Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as inventors.  A true and correct copy of the '341 patent is attached hereto as Exhibit A.

26.     The '341 patent claims, as an example and among other things, a system for facilitating natural language system responses utilizing accumulated short-term and long-term knowledge, the system comprising one or more physical processors programmed with one or more computer program instructions which, when executed, configure the one or more physical processors to: accumulate short-term knowledge based on one or more natural language utterances received during a predetermined time period; expire one or more items of short-term knowledge that are based on one or more natural language utterances received prior to the predetermined time period; accumulate long-term knowledge based on one or more natural language utterances received prior to the predetermined time period, wherein the long-term knowledge includes at least one of the one or more expired items of short-term knowledge; receive a first natural language utterance via an input device; determine a first context for the first natural language utterance based on the short-term knowledge and the long-term knowledge; determine an interpretation of the first natural language utterance based on the first context; and generate a first response to the first natural language utterance based on the interpretation (Claim 10).

27.     Voice user interface systems in existence before the invention of the '341 patent were typically of the "Command and Control" type.  Such systems used verbal menus to restrict information that a person can provide at a given point.  For example, the voice system would present the list of available options either verbally and/or on a screen.  The user could then respond by speaking the menu item.  Such a system could include numerous menus that the user would have to get through to convey the desired information to the system and/or to cause the system to take the desired action.  This type of system often failed to provide a seamless conversational experience.

28.     The inventors of the '341 patent recognized a significant problem with the Command and Control systems in that users would have to memorize exact words and phrases to interact with the system.  This required significant learning because the user had to know which words and phrases to use in order to make a request of a particular Command and Control voice user interface system.  '341 patent at 1:61-2:15.  Additionally, the process of stepping through menus could be time-consuming and, in some cases, would dissuade a user from utilizing the voice-based system.  *Id.*

29.     To overcome the shortcoming of prior art systems, the inventors provided a solution that can use, among other things, a "conversational speech engine" or similar technology to interpret a voice input.  The conversational speech engine—which was not well-understood, routine, or conventional—could be implemented locally on a user device or remotely on a server.  In certain embodiments, the conversational speech engine can include a conversational language processor and/or a context determination process.  The conversational speech engine may communicate with one or more databases to generate an adaptive conversational response.  *Id.* at 8:9-12.

30.    In some embodiments, the '341 patent uses short-term and/or long-term shared knowledge about user utterances to determine a context for the request, infer additional information about a request, and provide an adaptive conversational response.  Figure 1 shows an architecture for an embodiment of the conversational speech engine of the cooperative conversational voice user interface.

31.    The inventors were thereby able to improve the functioning of voice user interface systems which improved the operation of those systems in an unconventional manner.  For example, the innovations in the '341 patent allowed a user to converse naturally with a voice user interface system instead of "dumb[ing] down" their requests to match the simple sets of instructions that existing Command and Control systems required.  *Id.* at 2:9-12.  In this regard, one of the problems faced by the inventors was necessarily rooted in voice user interface technology specifically arising in the realm of voice user interface systems.  The commercial success and industry accolades provide objective evidence as to the VoiceBox Patents' innovative approach.

32.    The prior art in the field of voice user interfaces neither taught accumulating short-term knowledge nor expressed any appreciation for the substantial advantages associated with utilizing this shared knowledge for various purposes in a conversational speech engine.  Such uses include to identify context, infer additional information about an utterance that contains insufficient information to complete a request, establish an intended meaning for an utterance within the context based on the additional information inferred about the utterance, and generate a response based on the intended meaning established within the identified context.  In this regard, accumulating and using both short-term and long-term knowledge was not well-understood, routine, or conventional and stands in sharp contrast to the conventional and routine approach of

Command and Control systems that require a user to use rigid menus to establish context before making a request.

**The '274, '489 and '456 patents**

33.    The '274 patent, entitled "SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND TRACKING ADVERTISEMENT INTERACTIONS IN VOICE RECOGNITION CONTEXTS," was duly and legally issued by the United States Patent & Trademark Office on September 3, 2013, and named Tom Freeman and Mike Kennewick as inventors.  A true and correct copy of the '274 patent is attached hereto as Exhibit B.

34.    The '274 patent claims, as an example and among other things, a system to deliver targeted advertisements and track advertisement interactions in voice recognition contexts, comprising one or more processors configured to: receive a natural language utterance from a voice-enabled device; process the natural language utterance to identify one or more requests associated with the natural language utterance; determine that the natural language utterance contains a request that is incomplete or ambiguous; select one or more advertisements associated with the natural language utterance; output the one or more selected advertisements to the voice-enabled device; monitor interaction between a user and the one or more selected advertisements; and interpret the request that is incomplete or ambiguous based on the interaction (Claim 13).

35.    The '489 patent, entitled "SYSTEM AND METHOD FOR SELECTING AND PRESENTING ADVERTISEMENTS BASED ON NATURAL LANGUAGE PROCESSING OF VOICE-BASED INPUT," was duly and legally issued by the United States Patent & Trademark Office on March 27, 2012, and named Tom Freeman and Mike Kennewick as inventors.  A true and correct copy of the '489 patent is attached hereto as Exhibit C.

36.    The '489 patent claims, as an example and among other things, a system to select and present advertisements in response to natural language utterances, comprising a speech recognition engine configured to recognize one or more words or phrases in a natural language utterance that contains a request; a conversational language processor configured to interpret the recognized words or phrases to establish a context associated with the natural language utterance; and a server associated with the speech recognition engine and the conversational language processor, wherein the server is configured to: deliver an advertisement in the established context associated with the natural language utterance to an electronic device in communication with the server, wherein the advertisement relates to one or more of the recognized words or phrases, an action associated with the request contained in the utterance, a personalized cognitive model derived from an interaction pattern associated with a specific user, a generalized cognitive model derived from an interaction pattern associated with a plurality of users, or an environmental model derived from environmental conditions or surroundings associated with the specific user; track an interaction pattern associated with the advertisement delivered to the electronic device; update the personalized cognitive model, the generalized cognitive model, and the environmental model based on the tracked interaction pattern associated with the advertisement; and build long-term shared knowledge and, short-term shared knowledge from the updated personalized cognitive model, the updated generalized cognitive model, and the updated environmental model, wherein the conversational language processor is further configured to use the long-term shared knowledge and the short-term shared knowledge to interpret a subsequent natural language utterance (Claim 9).

37.    The '456 patent, entitled "SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND/OR PROVIDING NATURAL LANGUAGE

PROCESSING BASED ON ADVERTISEMENTS," was duly and legally issued by the United States Patent & Trademark Office on February 25, 2025, and named Tom Freeman and Mike Kennewick as inventors.  A true and correct copy of the '456 patent is attached hereto as Exhibit D.

38.    The '456 patent claims, as an example and among other things, a system for processing voice-based natural language utterances that include requests and selecting and presenting purchase opportunities based thereon, the system comprising one or more physical processors programmed with computer program instructions, which when executed cause the one or more physical processors to: provide a first natural language utterance from a user as an input to a speech recognition engine; receive words and/or phrases, recognized from the first natural language utterance, as an output of the speech recognition engine; determine a context for the natural language utterance based on at least the recognized words and/or phrases; select a purchase opportunity for the user related to the first natural language utterance based on selection criteria, the selection criteria comprising the determined context; deliver the selected purchase opportunity to the user via communication to an electronic device of the user; track over time the user's interaction with the selected purchase opportunity after its delivery to the electronic device, the tracked interaction including input received by the electronic device from the user interacting with, or completing a transaction related to, the purchase opportunity; build or update a user-specific profile for the user based on the tracked interaction of the user with the selected purchase opportunity; interpret a subsequent second natural language utterance from the user using at least the built or updated user-specific profile including the tracked interaction of the user with the selected purchase opportunity; and select a subsequent second purchase opportunity for the user related to the second natural language utterance based on second selection criteria, the second

selection criteria comprising the interpreted content of the second natural language utterance (Claim 11).

39.    Before the inventions of the '274, '489 and '456 patents, voice user interface systems were typically difficult to use, in part, because they had complex human to machine interfaces.  Such systems forced a user to navigate through a series of menus and provide a series of user inputs to perform a relatively simple task.

40.    The inventors recognized significant problems with existing systems.  The systems did not allow a user to directly issue a request without having to memorize specific syntaxes, words, phrases, concepts, semantic indicators, or other keywords/qualifiers.  Similarly, when users were uncertain of particular needs, many existing systems did not engage the user in a productive, cooperative dialogue to resolve requests and advance a conversation.  Instead, many existing speech interfaces forced users to use a fixed set of commands or keywords to communicate requests in ways that systems would understand.  Using existing voice user interfaces, there was virtually no option for dialogue between the user and the system to satisfy mutual goals.  '274 patent at 1:50-67.

41.    The inventors recognized other problems with existing systems.  The lack of adequate voice user interfaces resulted in missed opportunities for providing valuable and relevant information to users.  Not only did this potentially leave user requests unresolved, in certain instances, providers of goods and services may have lost out on potential business.  In an increasingly global marketplace, where marketers are continually looking for new and effective ways to reach consumers, the problems with existing voice user interfaces left a large segment of consumer demand unfulfilled.  Furthermore, existing techniques for marketing, advertising, or

otherwise calling consumers to action failed to effectively utilize voice-based information, which is one of the most natural, intuitive methods of human interaction. *Id.* at 2:1-13.

42.    The inventors were able to improve the functioning of voice user interface systems and thereby improve the operation of those systems in an unconventional manner.  For example, the innovations in the '274, '489 and '456 patents allowed a user to directly issue natural language requests and engage in a productive, cooperative dialogue to resolve requests and advance a conversation.  In this regard, one of the problems faced by the inventors was necessarily rooted in voice user interface technology specifically arising in the realm of voice user interface systems.

43.    Conventional wisdom was keenly focused on menu-based systems.  Indeed, web stores were (and still are) based on product categorizations.  The typical user experience involves going through a series of menus to narrow down potential products.  As such, there was particular focus and motivation to emulate the menus in a speech-based system.  That is, for the computer to read options which the end-user selects before moving to the next menu.  The '274, '489 and '456 patents represent a dramatic departure by selecting content based on domain information and context.

## THE ACCUSED TORCHY'S TACOS INSTRUMENTALITIES

44.    Torchy's Tacos provides voice recognition/natural language understanding technology to its customers placing phone orders ("the Torchy's Tacos Voice AI Smart Ordering Systems").

45.    On December 5, 2024, Torchy's Tacos and SoundHound AI, Inc. ("SoundHound AI" or "SoundHound") announced the rollout of "SoundHound's advanced voice AI Smart Ordering product, now live at all 130 Torchy's locations."  (SoundHound AI, *Torchy's Tacos Debuts SoundHound's Voice AI Phone Ordering Across All Locations*,

https://www.soundhound.com/newsroom/press-releases/torchys-tacos-debuts-soundhounds-voice-ai-phone-ordering-across-all-locations/.)

46.     The technology underlying Torchy's Tacos Voice AI Smart Ordering Systems are implemented on servers—and interact with mobile devices—having processors and memory, as well as voice input, processing, and output functions:



(SoundHound AI, *Smart Ordering*, https://www.soundhound.com/voice-ai-products/smart-ordering/.)

47.     On information and belief, Torchy's Tacos operates the accused Torchy's Tacos Voice AI Smart Ordering Systems on its servers or systems under its control which contain processors and memory capability:



(SoundHound AI, *Edge & Cloud Connectivity*, https://www.soundhound.com/voice-ai-products/edge/; *see also e.g.*, Houndify, *Terms and Conditions*, https://www.houndify.com/terms.)

48.    On information and belief, Torchy's Tacos provides the accused Torchy's Tacos Voice AI Smart Ordering Systems from a memory source to Torchy's Tacos customers.

49.    On information and belief, Torchy's Tacos performs or supports the installation of software implementing the accused Torchy's Tacos Voice AI Smart Ordering Systems.

50.    On information and belief, Torchy's Tacos provides active support to Torchy's Tacos restaurant customers to encourage and instruct the customers' use of the Torchy's Tacos Voice AI Smart Ordering Systems.  (SoundHound AI, *Torchy's Tacos Debuts SoundHound's Voice AI Phone Ordering Across All Locations*, https://www.soundhound.com/newsroom/press-releases/torchys-tacos-debuts-soundhounds-voice-ai-phone-ordering-across-all-locations/  ("'At Torchy's Tacos we want our guests to have the best experience every time they engage with the brand,' said Thai Tran, Chief Technology Officer of Torchy's Tacos. 'Partnering with SoundHound and using their Smart Ordering system, we are able to give our guests another way

to easily order our food. We know that they'll get an easy-to-use option that ensures their orders are accurate, done on time, and they get the service they have come to expect from us. And it allows our team to be more efficient so we can elevate the total guest experience.'")).)

## COUNT I:  INFRINGEMENT OF THE '341 PATENT

51.    VoiceBox incorporates the foregoing paragraphs as if set forth herein.

52.    Torchy's Tacos, on its own or by conduct attributable to it, has directly infringed, and continues to infringe, the '341 patent by making, using, selling, offering for sale, and/or importing into the United States, Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '341 patent in violation of 35 U.S.C. § 271(a).  (*See, e.g.*, ¶¶ 43-49 *supra*.)  Exemplary evidence of Torchy's infringement of at least one claim of the '341 patent is further set forth in Exhibit E, respectively.  VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule.

53.    Torchy's Tacos has been and is inducing infringement of the '341 patent by actively and knowingly inducing others to make, use, sell, offer for sale, and/or import Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '341 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Torchy's Tacos advertises, markets, and promotes software implementing the Torchy's Tacos Voice AI Smart Ordering Systems to operate in an infringing manner when used on restaurant customer devices and systems when placing a phone order (e.g., as shown in the attached claim chart).  (*See also, e.g.*, ¶¶ 44-50 *supra*.)  On information and belief, Torchy's Tacos causes the Torchy's Tacos Voice AI Smart Ordering Systems to be made available through its telephone numbers for phone orders and questions at all of Torchy's restaurant locations.  On information and belief, Torchy's Tacos instructs restaurant

customers to use Torchy's Tacos Voice AI Smart Ordering Systems in an infringing manner and provides technical support and instruction for such use.

54.    VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '341 patent to the extent that any patented article is subject to a duty to mark.

55.    Torchy's infringement of the '341 patent has caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF THE '274 PATENT

56.    VoiceBox incorporates the foregoing paragraphs as if set forth herein.

57.    Torchy's Tacos, on its own or by conduct attributable to it, has directly infringed, and continues to infringe, the '274 patent by making, using, selling, offering for sale, and/or importing into the United States, Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '274 patent in violation of 35 U.S.C. § 271(a).  (*See, e.g.*, ¶¶ 44-50 *supra*.)  Exemplary evidence of Torchy's infringement of at least one claim of the '274 patent is further set forth in Exhibit F.  VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule.

58.    Torchy's Tacos has been and is inducing infringement of the '274 patent by actively and knowingly inducing others to make, use, sell, offer for sale, and/or import Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '274 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Torchy's Tacos advertises, markets, and promotes software implementing the Torchy's Tacos Voice AI Smart Ordering Systems to operate in an infringing manner when used on restaurant customer devices and systems when placing a phone order (e.g., as shown in the attached claim chart).  (*See also, e.g.*, ¶¶ 44-50 *supra*.)

On information and belief, Torchy's Tacos causes the Torchy's Tacos Voice AI Smart Ordering Systems to be made available through its telephone numbers for phone orders and questions at all of Torchy's restaurant locations.  On information and belief, Torchy's Tacos instructs restaurant customers to use Torchy's Tacos Voice AI Smart Ordering Systems in an infringing manner and provides technical support and instruction for such use.

59.     VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '274 patent to the extent that any patented article is subject to a duty to mark.

60.     Torchy's infringement of the '274 patent has caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

### COUNT III:  INFRINGEMENT OF THE '489 PATENT

61.     VoiceBox incorporates the foregoing paragraphs as if set forth herein.

62.     Torchy's Tacos, on its own or by conduct attributable to it, has directly infringed, and continues to infringe, the '489 patent by making, using, selling, offering for sale, and/or importing into the United States, Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '489 patent in violation of 35 U.S.C. § 271(a).  (*See, e.g.*, ¶¶ 43-49 *supra*.)  Exemplary evidence of Torchy's infringement of at least one claim of the '489 patent is further set forth in Exhibit G.  VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule.

63.     Torchy's Tacos has been and is inducing infringement of the '489 patent by actively and knowingly inducing others to make, use, sell, offer for sale, and/or import Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '489 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Torchy's Tacos advertises, markets,

and promotes software implementing the Torchy's Tacos Voice AI Smart Ordering Systems to operate in an infringing manner when used on restaurant customer devices and systems when placing a phone order (e.g., as shown in the attached claim chart).  (*See also, e.g.*, ¶¶ 44-50 *supra*.)  On information and belief, Torchy's Tacos causes the Torchy's Tacos Voice AI Smart Ordering Systems to be made available through its telephone numbers for phone orders and questions at all of Torchy's restaurant locations.  On information and belief, Torchy's Tacos instructs restaurant customers to use Torchy's Tacos Voice AI Smart Ordering Systems in an infringing manner and provides technical support and instruction for such use.

64.    VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '489 patent to the extent that any patented article is subject to a duty to mark.

65.    Torchy's infringement of the '489 patent has caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

## COUNT IV:  INFRINGEMENT OF THE '456 PATENT

66.    VoiceBox incorporates the foregoing paragraphs as if set forth herein.

67.    Torchy's Tacos, on its own or by conduct attributable to it, has directly infringed, and continues to infringe, the '456 patent by making, using, selling, offering for sale, and/or importing into the United States, Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '456 patent in violation of 35 U.S.C. § 271(a).  (*See, e.g.*, ¶¶ 44-50 *supra*.)  Exemplary evidence of Torchy's infringement of at least one claim of the '456 patent is further set forth in Exhibit H.  VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule.

68.    Torchy's Tacos has been and is inducing infringement of the '456 patent by actively and knowingly inducing others to make, use, sell, offer for sale, and/or import Torchy's Tacos Voice AI Smart Ordering Systems, which infringe one or more claims of the '456 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Torchy's Tacos advertises, markets, and promotes software implementing the Torchy's Tacos Voice AI Smart Ordering Systems to operate in an infringing manner when used on restaurant customer devices and systems when placing a phone order (e.g., as shown in the attached claim chart).  (*See also, e.g.*, ¶¶ 43-49 *supra*.) On information and belief, Torchy's Tacos causes the Torchy's Tacos Voice AI Smart Ordering Systems to be made available through its telephone numbers for phone orders and questions at all of Torchy's restaurant locations.  On information and belief, Torchy's Tacos instructs restaurant customers to use Torchy's Tacos Voice AI Smart Ordering Systems in an infringing manner and provides technical support and instruction for such use.

69.    VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '456 patent to the extent that any patented article is subject to a duty to mark.

70.    Torchy's infringement of the '456 patent has caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

## PRAYER FOR RELIEF

**WHEREFORE,** VoiceBox requests that this Court enter judgment against Torchy's Tacos as follows:

A.    Torchy's has been infringing and continues to infringe one or more claims of the VoiceBox Patents, literally or under the doctrine of equivalents;

B.      Torchy's infringement of the VoiceBox Patents shall be enjoined until expiration of the VoiceBox Patents;

C.      An award of damages, including a reasonable royalty award, adequate to compensate VoiceBox for Torchy's infringement, with pre- and post-judgment interest;

D.      A declaration that this case is exceptional and an award of attorneys' fees under 35 U.S.C. § 285;

E.      An award of costs and expenses in this action; and

F.      Such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

VoiceBox demands trial by jury on all claims and issues so triable.

Dated: June 11, 2025                                Respectfully submitted,

Of Counsel:

                                                    By: */s/ Shaun W. Hassett*
Amr O. Aly *(pro hac vice forthcoming)*             Michael E. Jones
**JENNER & BLOCK LLP**                              State Bar No. 10929400
1155 Avenue of the Americas                         mikejones@potterminton.com
New York, NY 10036                                  Shaun W. Hassett
Phone: (212) 407-1774                               State Bar No. 24074372
Fax: (212) 891-1699                                 shaunhassett@potterminton.com
aaly@jenner.com                                     **POTTER MINTON, P.C.**
                                                    102 N. College Ave., Suite 900
Yusuf Esat *(pro hac vice forthcoming)*             Tyler, Texas 75702
**JENNER & BLOCK LLP**                              Phone: (903) 597-8311
353 N. Clark St.                                    Fax: (903) 593-0846
Chicago, IL 60654
Phone: (312) 840-7654
Fax: (312) 527-0484
Email: yesat@jenner.com

David Greenbaum *(pro hac vice forthcoming)*        ***Attorneys for Plaintiff VB Assets, LLC d/b/a***
**GREENBAUM LAW LLC**                               ***Voicebox Tech***
210 Allison Court
Englewood, NJ 07631
Email: david@greenbaum.law